IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DEWAYNE RICHARDSON, | : | CIVIL NO. 4:CV-10-1009 |
| Plaintiff, | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA, et al., | : | |
| Defendants | : | |

## MEMORANDUM

Plaintiff Dewayne Richardson ("Richardson"), an inmate presently confined at the Federal Correctional Institution Allenwood ("FCI Allenwood") in White Deer, Pennsylvania, initiated the above action pro se by filing a complaint under the provisions of 28 U.S.C. § 1331. (Doc. 1.) This case is proceeding on Richardson's amended complaint (Doc. 27) against defendants Susan Stover, correctional systems supervisor; Steve Shank, Charles Fegley, Debbie Wolever, and Scott Pawling, current or former inmate systems officers; and Richard Sweithelm, correctional counselor. Richardson's remaining claims are that his First Amendment rights were violated when his legal mail was opened, read, and copied, and/or destroyed and when his tennis shoes were intentionally confiscated in retaliation for his filing of grievances. (Doc. 27 at 7-10.)

Presently pending is a motion for summary judgment, or in the alternative, motion to dismiss, filed on behalf of defendants. (Doc. 33.) For the reasons set forth below, judgment will be entered in defendants' favor based upon Richardson's failure to exhaust administrative remedies.

I.  **Standard of Review**

Federal Rule of Civil Procedure 56(a) provides that "[t]he Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law. Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one. Id. An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." Id.

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The movant meets this burden by pointing to an absence of evidence supporting an essential element as to which the non-moving party will bear the burden of proof at trial. Id. at 325.

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir. 1988). Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to

refute the moving party's contention that the facts entitle it to judgment as a matter of law. Anderson, 477 U.S. at 256-57. The non-moving party "cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial." Jones v. United Parcel Serv., 214 F.3d 402, 407 (3d Cir. 2000). Arguments made in briefs "are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion." Jersey Cent. Power & Light Co. v. Twp. of Lacey, 772 F.2d 1103, 1109-10 (3d Cir. 1985).

In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249. Thus, summary judgment should not be granted when there is a disagreement about the facts or the proper inferences that a factfinder could draw from them. Peterson v. Lehigh Valley Dist. Council, 676 F.2d 81, 84 (3d Cir. 1982). Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson, 477 U.S. at 247-48.

II. **Discussion**

　A. **Undisputed Facts**

Middle District of Pennsylvania Local Rule ("L.R.") 56.1 provides, in relevant part, as follows: "The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in the [moving party's] statement, as to which it is contended there is a genuine issue to

be tried . . . All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party." Richardson was advised of the requirements of L.R. 56.1 in the standing practice order issued in this case on May 11, 2010 (Doc. 6). He was reminded of these requirements in our August 24, 2011 order (Doc. 36) and was warned that his failure to file a responsive statement of material facts would result in defendants' statement of facts being deemed admitted. Nevertheless, Richardson failed to file a separate statement of material facts controverting defendants' statement.[1] Accordingly, all material facts set forth in defendants' statement will be deemed admitted. Defendants' statement (Docs. 34) and supporting exhibits[2] (Doc. 34-1) establish the following undisputed facts relevant to the disposition of the instant motion:

Richardson currently is incarcerated at FCI Allenwood serving a thirty (30) year term

---

[1] Although he included a section in his opposition brief entitled "Plaintiffs' [sic] statement of material facts" in which he reiterates the requirements for federal inmates to exhaust administrative remedies as set forth in defendants' statement (see Doc. 37 at 5; Doc. 34 ¶¶ 8-14), Richardson fails to respond to defendants' remaining statements. In addition, after the instant motion became ripe for review, Richardson filed several documents, including one labeled "Plaintiff's Statement of Disputed Factual Issues." (Doc. 42.) Notwithstanding the fact that this "Statement", along with Richardson's other filings, was stricken from the record on defendants' motion as improperly filed without first having obtained leave of court as required by L.R. 7.7 (see Doc. 46), it is not responsive to defendants' statement, and therefore would not have met the requirements of L.R. 56.1 even if Richardson had filed it in the first instance with his opposition brief.

[2] In support of their request for summary judgment, defendants have submitted the declaration of Joseph McCluskey, senior attorney employed by the Federal Bureau of Prisons ("BOP") at FCI Allenwood (Doc. 34-1 at 3-7), and supporting attachments, including the following information relating to Richardson: Public Information Data (Attach. 1); Inmate History (Attach. 2); and Administrative Remedy Generalized Retrieval (Attach. 3).

of imprisonment for mayhem while armed, aggravated assault while armed, robbery, and assault with a dangerous weapon. (Doc. 34, Defs.' Statement of Material Facts ("SMF"), ¶ 1.) His projected release date is September 4, 2030. (Id. ¶ 2.) He has been housed at FCI Allenwood since August 17, 2004. (Id. ¶ 3.)

Richardson initiated this lawsuit on May 11, 2010. (Id. ¶ 27; Doc. 1.) In his amended complaint, Richardson alleges that defendants "opened, read copied legal documents and in some instance[s] cut up the legal documents" from his attorney, the Department of Justice, and the Superior Court of the District of Columbia, in violation of BOP Policy Statement 540.18 regarding Special Mail. (Doc. 34 ¶ 4.; Doc. 27, Amended Complaint, ¶¶ 21-23.) He also alleges that, on May 11, 2008, defendant Sweithelm retaliated against him by confiscating three (3) pairs of shoes and by failing to send them to Richardson's mother. (Doc. 34 ¶ 5; Doc. 27 ¶¶ 27-34.) Richardson also alleges that he was prevented from exhausting his administrative remedies because Sweithelm was the only staff member who could give him the forms, and Sweithelm refused. (Doc. 34 ¶ 6; Doc. 27 at 10 ¶ 5.) Richardson requests injunctive relief as well as compensatory and punitive damages. (Doc. 34 ¶ 7; Doc. 27 at 10-12.)

The BOP has a three level administrative remedy process, which is a method where an inmate may seek formal review of a complaint related to any aspect of his confinement if less formal procedures have not resolved the problem. (Doc. 34, Defs.' SMF, ¶ 8.) The procedure is codified at 28 C.F.R. § 542.10 et seq. (Id. ¶ 9.) This process involves the filing of a request for administrative relief (BP-9) to the warden of the institution where the inmate

is confined. (Id. ¶ 10.) The inmate has twenty (20) calendar days from the date on which the basis for the request occurred to submit a BP-9 to the warden. (Id. ¶ 11; 28 C.F.R. § 542.14.) In the event that the inmate is dissatisfied with the warden's response, he may file an appeal (BP-10) to the Regional Director. (Doc. 34 ¶ 12; 28 C.F.R. § 542.15.) The final step in the administrative remedy process is an appeal to the General Counsel (BP-11) submitted to the BOP Central Office. (Doc. 34 ¶ 13; 28 C.F.R. § 542.15.) A decision by the BOP is not final, and hence, not reviewable, until relief has been denied by the General Counsel. (Doc. 34 ¶ 14; 28 C.F.R. § 542.15.)

All administrative remedies, whether accepted or rejected, are entered into the BOP computerized database; but, if a the remedy is rejected, a copy is not maintained. (Doc. 34, Defs.' SMF, ¶ 15.) Since Richardson has been in BOP custody, he has filed twenty-two (22) administrative remedies. (Id. ¶ 16; Doc. 37, Pl.'s Opp'n Br., at 6.)

1. **Administrative Remedies Relating to Legal Mail**

On August 10, 2009, Richardson filed Administrative Remedy No. 551096-F1 with the institution requesting to know why his legal mail was opened. (Doc. 34 ¶ 17; Attach. 3, Doc. 34-1 at 24[3].) This remedy was rejected on August 11, 2009 as untimely because it was filed more than twenty (20) days after the event Richardson was complaining about. (Doc. 34 ¶ 18; Doc. 34-1 at 24.)

On August 31, 2009, Richardson filed Administrative Remedy No. 551096-R1 as an

---

[3]Citations to page numbers of documents on the docket in this action refer to the page number generated by the CM/ECF System.

appeal from the institution's rejection to the BOP Regional Office. (Doc. 34 ¶ 19; Doc. 34-1 at 26.) On September 1, 2009, the Regional Office also rejected the remedy as untimely and noted its concurrence with the institution's rejection for untimeliness. (Doc. 34 ¶ 20; Doc. 34-1 at 26.)

Richardson has not filed any other administrative remedies regarding the opening, copying, reading, or destruction of his legal mail.[4] (Doc. 34 ¶ 21; Doc. 34-1 at 16-26.)

### 2. Administrative Remedies Relating to Tennis Shoes

On August 10, 2009, Richardson filed Administrative Remedy No. 551098-F1 with the institution complaining that his tennis shoes were not mailed home. (Doc. 34 ¶ 22; Doc. 34-1 at 24.) This remedy was rejected on August 11, 2009 as untimely because it was filed more than twenty (20) days after the incident Richardson was complaining about. (Doc. 34 ¶ 23; Doc. 34-1 at 24.) On August 28, 2009, Richardson filed Administrative Remedy No. 551098-R1 as an appeal of the institution's rejection to the Regional Office. (Doc. 34 ¶ 24; Doc. 34-1 at 25.) On September 1, 2009, the Regional Office also rejected the remedy and noted its concurrence with the institution's rejection as untimely. (Doc. 34 ¶ 25; Doc. 34-1 at

---

[4]The summary judgment record shows that Richardson filed an informal resolution request on November 20, 2007 regarding the alleged improper opening of his legal mail. (See Doc. 39, Pl.'s Exs., at 2-3.) As stated by Attorney McCluskey in his declaration, all administrative remedies are entered into the BOP computerized database (see Doc. 34-1 at 5 ¶ 7), but as explained in defendants' reply brief, informal resolution attempts that are filed prior to initiating the administrative remedy process are not recorded in the SENTRY database, but instead are returned to the inmate to attach to the BP-9 in the event the inmate chooses to appeal the informal response to the warden. (See Doc. 40 at 5-6 n.2.) Consequently, no record of Richardson's informal request regarding his legal mail is contained in his administrative remedy generalized retrieval. (See Doc. 34-1, Attach. 3.)

25.)

Richardson has not filed any other administrative remedies regarding the confiscation or mailing of his tennis shoes. (Doc. 34 ¶ 26; Doc. 34-1 at 16-26.)

**B.     Analysis**

The Prison Litigation Reform Act ("PLRA") requires inmates to present their claims through an administrative grievance process before filing suit in federal court. Specifically, section 1997e(a) of Title 42 of the United States Code provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." This "exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). "'[I]t is beyond the power of this court- or any other- to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis.'" Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) (quoting Beeson v. Fishkill Corr. Facility, 28 F. Supp. 2d 884, 894-95 (S.D.N.Y. 1998) (citing Weinberger v. Salfi, 422 U.S. 749, 766 (1975)). The PLRA "completely precludes a futility exception to its mandatory exhaustion requirement." Nyhuis, 204 F.3d at 71. The PLRA also mandates that inmates "properly" exhaust administrative remedies before filing suit in

federal court.[5]  Woodford v. Ngo, 548 U.S. 81, 92 (2006).

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90-91. Such requirements "eliminate unwarranted federal-court interference with the administration of prisons, and thus seek[ ] to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" Id. at 93 (quoting Porter, 534 U.S. at 525)). Failure to comply with procedural requirements of the applicable prison's grievance system will result in a procedural default of the claim. Spruill v. Gillis, 372 F.3d 218, 227-32 (3d Cir. 2004) ("[P]rison grievance procedures supply the yardstick for measuring procedural default.") A procedural default, "either through late or improper filings, bars the prisoner from bringing a claim in federal court unless equitable considerations warrant review of the claim." Gallego v. United States, Civil No. 1:02-CV-1157, 2005 WL 1653166, at *2 (M.D. Pa. July 8, 2005).

Defendants have demonstrated that Richardson has failed to exhaust his administrative remedies with respect to his only remaining claims in this action relating to his legal mail and retaliation. Specifically, the undisputed factual record demonstrates that, while Richardson filed administrative remedies relating to the alleged improper opening of his legal mail and

---

[5]Because a plaintiff's failure to exhaust is an affirmative defense, a plaintiff is not required to allege in his complaint that he has exhausted administrative remedies. Ray v. Kertes, 285 F.3d 287, 295 (3d Cir. 2002). Rather, failure to exhaust must be pleaded and proven by the defendants. Brown v. Croak, 312 F.3d 109, 111 (3d Cir. 2002).

the confiscation of his tennis shoes, he did not file those remedies until August 10, 2009, which was over one (1) year after he alleges his shoes were confiscated on May 11, 2008 in retaliation for his having filed grievances relating to the opening of his legal mail. Richardson's administrative remedies were rejected as untimely, and therefore, he has failed to exhaust the issues he seeks to pursue in this lawsuit.

Richardson argues that the exhaustion requirement should be excused because the administrative remedy process was not made available to him. (See Doc. 37 at 7.) Specifically, he claims that an administrative remedy he timely submitted in December 2007 never was responded to by the Warden. To support his claim, Richardson has provided a copy of an informal resolution request relating to the improper opening of his legal mail that he submitted on November 20, 2007, which the record shows was responded to on November 30, 2007. (See Doc. 39 at 2-3.) In his request, Richardson complained that legal mail he received from his attorney on or about November 18, 2007 was opened outside of his presence even though the front of the envelope clearly stated that the individual sending the mail was an "attorney at law." (See id. at 2.) The response to his request states as follows: "Although the sender of this particular piece of mail was identified on the envelope as 'Dennis M. Hart, Attorney At Law", there were no further markings stating that it was 'Legal Mail', 'Special Mail' and did not direct that it should be opened in your presence. For this reason, this piece of correspondence did not meet legal mail requirements and was therefore opened." (See id. at 3.) Richardson claims that, following his receipt of this response, on December 15, 2007, he filed a BP-9 administrative remedy with the warden by placing it in

the "General Outgoing mail". (See Doc. 37, Pl.'s Opp'n Br., at 8; Doc. 39, Pl.'s Exs., at 1-5.) He alleges that the warden never responded to his BP-9. (See Doc. 37 at 8; Doc. 39 at 4.) Richardson therefore claims that the administrative remedy he submitted on August 10, 2009 relating to the same issue was not an initial attempt to exhaust his administrative remedies, but instead "was an attempt to receive the status and actually inquire about the same issue" that allegedly never was responded to by the warden. (See Doc. 37 at 8.)

Richardson's argument fails because, even if it is true that he attempted to file a BP-9 with the warden in December 2007 relating to the issue of his legal mail, it is evident from his statement that he placed it in the "General Outgoing mail" that he did not follow the proper procedure for filing a BP-9 with the warden. Rather, an inmate seeking to appeal the decision in an informal resolution request is required to submit a properly filled-in BP-9 to the institution staff member designated to receive such requests, which in this case would be his unit counselor. Program Statement ("P.S.") 1330.16, Page 6, ¶ 8 c. (4).[6] Richardson received notice of this requirement through the inmate handbook, which would have been provided to him upon his entry into the BOP system. More significantly, he demonstrated his awareness of this requirement when he complied with it and successfully submitted a BP-9 to the warden on October 29, 2007, just a month and a half before he claims to have filed a BP-9 relating to his legal mail. (See Doc. 34, Defs.' SMF, ¶ 16; Doc. 34-1, Administrative Remedy Generalized Retrieval, at 18.) Richardson has not provided any evidence that the

---

[6]BOP Program Statements, available at http://www.bop.gov/DataSource/execute/dsPolicyLoc

warden actually received the BP-9 that he allegedly sent in the general outgoing mail on December 15, 2007, and in fact admits that he never received an acknowledgment of its receipt by the warden. (See Doc. 37 at 8.) He also has not provided any evidence that the defendants intercepted it in an attempt to hinder his exhaustion of administrative remedies. Richardson argues that defendant Sweithelm failed to investigate this BP-9 (see Doc. 37 at 11), but this argument also fails because the record contains no evidence that Sweithelm would have been aware of a BP-9 that was not submitted in the required manner. Consequently, Richardson has not successfully demonstrated that the administrative remedy process was not made available to him such that his failure to exhaust his administrative remedies with respect to the issue of his legal mail should be excused, and therefore, defendants are entitled to judgment as a matter of law as to Richardson's legal mail claim.

With respect to Richardson's retaliation claim, Richardson states in his opposition brief that, "defendant Sweithelm prevented [him] from timely exhausting his administrative remedies by informing [him] that his only recourse for relief for his shoes was thru [sic] a tort claim and that plaintiff did not need to exhaust his remedies untill [sic] the outcome of the Tort claim." (See Doc. 37 at 11 ¶ 13.) Defendant Sweithelm has conceded solely for the purposes of this motion that he gave Richardson the advice that, in order to obtain relief for the alleged loss of his tennis shoes, Richardson would have to file a tort claim. (See Doc. 40, Defs.' Reply Br., at 8.) Indeed, this advice is accurate with respect to the loss of the tennis shoes in and of itself. However, Richardson's argument fails to recognize that his claim that the confiscation of his tennis shoes was a form of retaliation in violation of his First

12

Amendment rights is a completely separate issue that would need to be exhausted through the administrative remedy process before he could pursue it in the instant lawsuit. Consequently, Richardson has not presented any evidence that he was prevented from exhausting his administrative remedies with respect to his retaliation claim such that the exhaustion requirement should be excused, and thus, defendants also are entitled to judgment as a matter of law as to Richardson's retaliation claim.

### III. Conclusion

Based on the foregoing, the motion for summary judgment filed on behalf of defendants (Doc. 33) will be granted. An appropriate order follows.

BY THE COURT:

s/James M. Munley
**JUDGE JAMES M. MUNLEY**
**United States District Court**

Dated: March 19, 2012

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DEWAYNE RICHARDSON, | : | CIVIL NO. 4:CV-10-1009 |
| Plaintiff, | : | |
| | : | (Judge Munley) |
| v. | : | |
| | : | |
| UNITED STATES OF AMERICA, et al., | : | |
| Defendants | : | |

## ORDER

**AND NOW,** to wit, this 19th day of March, 2012, in accordance with the foregoing memorandum, it is hereby **ORDERED** as follows:

1. Defendants' motion for summary judgment (Doc. 33) is GRANTED.

2. The Clerk of Court is directed to ENTER judgment in favor of defendants Stover, Shank, Fegley, Wolever, Pawling, and Sweithelm, and against plaintiff.

3. The Clerk of Court is directed to CLOSE this case.

4. Any appeal from this order is DEEMED frivolous and not in good faith. See 28 U.S.C. § 1915(a)(3).

BY THE COURT:

s/James M. Munley
JUDGE JAMES M. MUNLEY
United States District Court